IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:12CR00046-2 |
| v. | ) | **OPINION** |
| | ) | |
| **JOHN PAUL DEBORD,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for the United States; John Paul Debord, Pro Se Defendant.*

The defendant, John Paul Debord, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Debord claims that counsel provided ineffective assistance and that his indictment was improperly vague. This matter is before me upon the United States' Motion to Dismiss. The time allotted for Debord's response has expired, making the matter ripe for disposition. After reviewing the record, I grant the United States' motion and dismiss the Motion to Vacate, Set Aside, or Correct Sentence.

I.

On September 25, 2012, Debord was charged with two counts of a nine-count Indictment as follows: (1) Count One: conspiracy to manufacture 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B);

and (2) Count Five: possession of pseudoephedrine, a listed chemical, with the intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1)−(2).

On December 27, 2012, a Plea Agreement was filed with the court pursuant to Rule 11 of the Federal Rules of Criminal Procedure, which was fully endorsed by Debord, his counsel, and the Special Assistant United States Attorney. The Plea Agreement stipulated to a three-point enhancement pursuant to United States Sentencing Guidelines Manual ("USSG") § 2D1.1(b)(13)(C)(ii). This enhancement applies when an offense involves the manufacture of methamphetamine and creates a substantial risk of harm to human life or the environment. The Plea Agreement also included a three-point reduction to the offense level for a mitigating role in the offense, resulting in a base offense level of 28. (Plea Agree. 3, ECF No. 67.) Debord agreed to waive his right to appeal and collaterally attack the judgment, with the exception that he preserved his right to file a collateral attack based on ineffective assistance of counsel. (*Id.* 8.)

On January 3, 2013, Debord pleaded guilty to Count One of the Indictment. At the guilty plea hearing, Debord affirmed he had an adequate opportunity to read and discuss the Plea Agreement with counsel, and that no one had forced him or made any promises to cause him to plead guilty. (Plea Hr'g Tr. 11-15, ECF No. 134.) Debord further affirmed he was "fully satisfied with [his] lawyer's representation." (*Id.* 12.) The United States summarized the provision of the Plea

Agreement that set forth the guideline stipulations to the drug weight, the enhancement "added for endangerment," and the reduction for a mitigating role in the offense. (*Id.* 13.) Debord affirmed that he understood "those terms [were] included in [his] plea agreement." (*Id.* 13-14.) I asked, "Do you understand that under the plea agreement you waive or give up your right to collaterally attack your sentence, which means in the future you could not try to have your sentence or conviction set aside." (*Id.* 14). Debord responded, "Yes." (*Id.*) Finally, Debord affirmed that he was pleading guilty "because [he was], in fact, guilty." (*Id.* 23.) I found that Debord was "fully competent and capable of entering" an informed plea and that his plea of guilty was knowing and voluntary. (*Id.* 27.)

At the sentencing hearing, I overruled Debord's objections to the guideline range calculations in the Presentence Investigation Report ("PSR").[1] (Sentencing Mins. 1, ECF No. 121.) The PSR proposed a total offense level of 25 and a criminal history category of III.[2] The advisory guideline range for imprisonment was 70 to 87 months, with a minimum term of imprisonment for Count One of 60 months. During the sentencing hearing, I granted Debord's Motion for Departure

---

[1] Debord had objected to three of the four criminal history points proposed in the PSR. (Addendum to PSR 14, ECF No. 125.)

[2] The PSR found that Debord had a base offense level of 28, which was then reduced 3 points for acceptance of responsibility. (PSR 5-6, ECF No. 125.)

and/or Variant Sentence asking for a sentence of 60-months imprisonment, and I sentenced Debord to 60-months imprisonment.

In this § 2255 motion, Debord alleges that the Indictment was unconstitutionally vague because it failed to specify the type of methamphetamine he "alleg[ed]ly conspired to manufacture, i.e., L-meth[amphetamine], or D-methamphetamine." (Mot. to Vacate 24, ECF No. 127.) Debord also alleges that counsel provided ineffective assistance related to Debord's stipulation in the Plea Agreement to a three-point enhancement for creating a serious risk of harm to human life or the environment under USSG § 2D1.1(b)(13)(C)(ii). I find that Debord's Motion to Vacate fails and will be dismissed.

## II.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether a waiver is knowing and voluntary requires evaluation of the "adequacy of the plea colloquy," with "reference to the totality of the circumstances." *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir. 2013) (internal quotation marks and citation omitted). "Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the

4

waiver is valid." *Id.* (quoting *United States v. Thornsbury,* 670 F.3d 532, 537 (4th Cir. 2012)).

The record establishes that Debord entered a knowing and voluntary guilty plea, and he affirmed his understanding that he was waiving his right to collaterally attack the judgment and sentence. (Plea Hr'g Tr. 14, ECF No. 134.) Debord's claim that his Indictment was unconstitutionally vague falls within the scope of the collateral attack waiver in the Plea Agreement, and consequently, this claim must be dismissed.[3]

## III.

Debord also presents a claim of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).[4] The first prong of *Strickland* requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell

---

[3] This claim also fails on its merits "because the distinction between d- and l-methamphetamine has been eliminated from the Sentencing Guidelines, and l-methamphetamine is now treated the same as d-methamphetamine." *United States v. Taylor*, 224 F. App'x 269, 272 (4th Cir. 2007) (unpublished) (citing USSG § 2D1.1 & App. C at 430-33 (Amendment 518)); *see also United States v. Apfel*, 97 F.3d 1074, 1075 n.2 (8th Cir. 1996) ("As of November 1, 1995, the distinction between methamphetamine types has been eliminated and l-methamphetamine is treated the same as d-methamphetamine under the sentencing guidelines.").

[4] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong. *Id.* at 697.

5

below an objective standard of reasonableness. *Id*. at 687-88. Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Id*. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

The second prong of *Strickland* requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A petitioner who pleaded guilty must demonstrate that, but for counsel's alleged error, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Debord's claim of ineffective assistance of counsel does not show both the deficient performance and resulting prejudice required by *Strickland*. Debord claims counsel erred by advising him to stipulate in the Plea Agreement to a three point enhancement under USSG § 2D1.1(b)(13)(C)(ii), failing to object to the enhancement, failing to conduct adequate pretrial investigations to disprove the

applicability of the enhancement, and failing to adequately explain the stipulation regarding the enhancement.[5]

Debord argues that the enhancement was inapplicable to his case because his conduct did not pose a substantial risk to human life or the environment. Debord argues that if counsel had conducted adequate pretrial investigation, counsel would have found that there was insufficient evidence to support the enhancement. In support, Debord claims that his nearest neighbor lived at least one mile away from the location of the methamphetamine lab, no hazardous chemicals were discovered on the premises of the methamphetamine lab, and there was no evidence that the chemicals were stored unsafely. (Mot. to Vacate 22, ECF No. 127.)

United States Sentencing Guidelines Manual § 2D1.1, Application Note 18 identifies four factors a sentencing court must assess to determine whether an offense has created a substantial risk of harm to human life or the environment:

> (I) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

---

[5] Debord also claims his plea was not knowing and voluntary because counsel did not adequately explain the Plea Agreement and because the Plea Agreement was ambiguous. However, these claims are directly contradicted by Debord's affirmance under oath during his Rule 11 colloquy that he was satisfied with counsel's representation and that he understood that the enhancement "added for endangerment" was included in his Plea Agreement. (Plea Hr'g Tr. 12-14, ECF No. 134.) Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 221 (internal quotation marks omitted).

7

> (II) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
>
> (III) The duration of the offense, and the extent of the manufacturing operation.
>
> (IV) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

USSG § 2D1.1 cmt. n.18(B)(i); *see also United States v. Williams*, 514 F. App'x 379, 385 (4th Cir. 2013) (unpublished) ("While a district court must consider all four factors, it need not find that all are met in order to apply the enhancement."). Debord's claim fails under *Strickland* because evidence before the court supported a finding that the enhancement was applicable to Debord's case. Debord's PSR provided that a three-level increase was applicable under USSG § 2D1.1(b)(13)(C)(ii) because the offense involved the manufacture of methamphetamine and the offense created a substantial risk of harm to human life or the environment. (PSR 5, ECF No. 125.) The evidence, as noted in the PSR, stated that Debord "acknowledged that he had bought pseudoephedrine for [codefendant] Dempsey on several occasions over the last two to three years." (*Id.* 4.) The PSR also reported that during the course of the investigation "authorities reviewed the pseudoephedrine logs provided by local pharmacies" and it was discovered that from September 1, 2011, to March 17, 2012, Debord had bought

8

100.72 grams of pseudoephedrine. When combined with the codefendants' pseudoephedrine purchases, the defendants were capable of manufacturing at least 254.10 grams of methamphetamine during this conspiracy. (*Id.* 4-5.) The PSR also stated that a search conducted of the residence of codefendant Dempsey, found "a red phosphorous/iodine methamphetamine lab" as well as "various components and ingredients used in the manufacturing of methamphetamine. Also found at the residence were several mason jars containing liquids that were at different stages of the manufacturing process. A total of six mason jars were seized and tested and all contained various amounts of methamphetamine. (*Id.* 3-4.) Debord stipulated in his Plea Agreement to a total drug weight of between 200 grams and 350 grams of methamphetamine. (Plea Agree. 3, ECF No. 67.)

The size of the methamphetamine operation in which Debord was involved, and the fact that he admitted purchasing pseudoephedrine for several years to aid in the operation, establishes that the offense caused a danger to the environment and/or individuals. *See United States v. Frost*, 195 F. App'x 156, at *7 (4th Cir. 2006) (unpublished) ("The dangers of methamphetamine labs are well-documented."); *see also United States v. Whelan*, 201 F. App'x 681, 684 (11th Cir. 2006) (unpublished) (finding that evidence showing "the drug manufacturing process had taken place and was ongoing" to be sufficient to establish the duration of offense and extent of manufacturing operation.); *United States v. Layne*, 324

9

F.3d 464, 470 (6th Cir. 2003) (finding that a methamphetamine lab operating "for at least two weeks, and perhaps several weeks" supported imposing the enhancement).

Thus, Debord's ineffective assistance claim fails in light of the evidence on the record regarding the significant size of the methamphetamine operation, and the fact that Debord had admitted purchasing pseudoephedrine for codefendant Dempsey for at least two years. In short, Debord has not shown ineffective assistance of counsel related to the enhancement under § 2D1.1 (b)(13)(C)(ii) because the evidence supported the application of the enhancement. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (holding that counsel's failure to raise meritless objections does not amount to ineffective assistance); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996) (holding that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument").[6]

---

[6] Debord further argues that he merely supplied codefendant Dempsey with pseudoephedrine tablets and did not actually manufacture the methamphetamine. (Mot. to Vacate 20, ECF No. 127.) However, this argument has no merit because Debord can

10

IV.

For the foregoing reasons, I grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence. A separate Final Order will be entered herewith.

DATED: July 17, 2015

/s/ James P. Jones
United States District Judge

---

be held "responsible for the actions of his co-conspirators in furtherance of the conspiracy." *United States v. Davidson,* 417 F. App'x 347, 350 (4th Cir. 2011) (unpublished) (rejecting defendant's argument that he should not be held responsible for creating a hazard to human life or the environment because he had no control over what happened on a codefendant's property where much of the methamphetamine was manufactured).

11